IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ERICA CHARLITHA ODOM NUNN, | § | |
| | § | |
| *Plaintiff,* | § | SA-24-CV-00935-FB |
| | § | |
| vs. | § | |
| | § | |
| CONVERSE POLICE DEPARTMENT, | § | |
| PATROL LIEUTENANT KIMBERLY | § | |
| MOLDER, AND PATROL SERGEANT | § | |
| IRIS MATA; | § | |
| | § | |
| *Defendants.* | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [#21]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#6]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that the motion be **GRANTED IN PART AND DENIED IN PART**.

## I.    Background

Plaintiff, proceeding *pro se*, filed this civil rights action against the Converse Policy Department and two of its officers, Lieutenant Kimberly Molder and Patrol Sergeant Iris Mata ("the Officers"). Ms. Nunn's Second Amended Complaint [#19] brings claims pursuant to 42 U.S.C. § 1983 for violations of the First Amendment, Fourth Amendment, and Fourteenth Amendment. She also brings various tort claims and claim under 42 U.S.C. § 1985 for

conspiracy to violate civil rights. Ms. Nunn seeks damages, injunctive relief, expungement of her criminal record related to her arrest on August 26, 2022, and attorney's fees.

Defendants initially filed a motion to dismiss Ms. Nunn's First Amended Complaint on December 3, 2024 [#16], which was struck by the Court for failure to comply with the District Court's Standing Order [#17]. After the parties conferred about the motion, Plaintiff filed her Second Amended Complaint[1] [#19], and Defendants filed a Motion to Dismiss Plaintiff's Second Amended Complaint [#21]. Ms. Nunn filed a response [#24], and Defendants replied [#25]. The motion is therefore ripe for the Court's review.

## II.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted). However, a Court need not credit conclusory allegations or

---

[1] Ms. Nunn's live pleading is titled "Final Amended Complaint For A Civil Case" [#19]. The Court will refer to it as the Second Amended Complaint for clarity.

allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief. *See Twombly*, 550 U.S. at 570.

Generally, in deciding a motion to dismiss, a court may not look beyond the four corners of the plaintiff's pleadings without converting the motion to a motion for summary judgment. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999); Fed. R. Civ. P. 12(d). The Court may, however, consider documents attached to the complaint and those that are central to the claims at issue and incorporated into the complaint by reference. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

Because Plaintiff is a *pro se* litigant, her pleadings are to be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, *pro se* litigants, like all other parties, must follow the Federal Rules of Civil Procedure. *See Chhim*, 836 F.3d at 469 ("We hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, but pro se plaintiffs must still plead factual allegations that raise the right to relief above the speculative level.").

### III.     Video Evidence—Not Considered at Motion-to-Dismiss Stage

Defendants' Motion to Dismiss heavily relies upon body camera footage that allegedly depicts the Officers possessing a different court order awarding the residence to Ms. Nunn's ex-

husband. Mainly citing summary-judgment stage opinions,[2] Defendants claim the Court may permissibly consider this footage in ruling on their motion to dismiss, as the allegations in Ms. Nunn's complaint are documented in the footage, are central to her claims, and directly contradict her allegations.

The undersigned disagrees that the Court may view the submitted body camera footage at the motion-to-dismiss stage. The Fifth Circuit has approved of district courts considering body camera footage in § 1983 cases only where the plaintiff's complaint itself relies on the footage. *See, e.g.*, *Robles v. Ciarletta*, 797 F. App'x 821, 832 (5th Cir. 2019) (holding that the district court properly considered body camera footage at the motion-to-dismiss stage where "[the plaintiff] relie[d] on the video . . . as evidence that [the officer] lacked probable cause" in his complaint). Body camera footage merely depicting allegations in a complaint does not make that video central to a plaintiff's claims. *Ramos v. Taylor*, 646 F. Supp. 3d 807, 815–16 (W.D. Tex. 2022); *Ambler v. Williamson Cnty., Tex.*, No. 1-20-CV-1068-LY, 2021 WL 769667, at *8 (W.D. Tex. Feb. 25, 2021) (Hightower, J.) (quoting *Slippi-Mensah v. Mills*, No. 1:15-CV-07750-NLH-JS, 2016 WL 4820617, at *3 (D.N.J. Sept. 14, 2016)). Instead, where a district court dismissed a § 1983 case based on body camera footage not attached to or referenced in the plaintiff's complaint, the Fifth Circuit treated the dismissal as "an implicit conversion to summary judgment." *See Hodge v. Engleman*, 90 F.4th 840, 843–45 (5th Cir. 2024).

Ms. Nunn did not attach the body camera footage to her pleading, nor did she rely upon the videos to make her claims. On the contrary, Ms. Nunn asserts in her response that her claims

---

[2] The one motion-to-dismiss stage opinion cited by Defendants involved a complaint with screen captures from the relevant body camera footage. *See Rivera v. City of Pasadena*, 555 F. Supp. 3d 443, 452 (S.D. Tex. 2021). Because Ms. Nunn did not rely on Defendants' footage in this way or any similar way, this case does not support that the Court may review Defendants' footage at this time.

are based on *different* body camera footage from "other officers present on the scene . . . . whose recordings Defendants do not cite or submit." (Pl. Resp. [#24], at 4.) Because Ms. Nunn did not rely upon Defendants' body camera footage or attach it to her Second Amended Complaint, the Court may not consider the body camera footage at this early stage in the litigation. *See Hodge*, 90 F.4th at 843–45.

## IV.    Allegations in the Second Amended Complaint

Instead, the Court must rely on Ms. Nunn's pleadings in her Second Amended Complaint in resolving the pending motion to dismiss. According to her pleadings, Ms. Nunn is a resident of Guadulupe County, Texas, who in 2022 was in the middle of divorce proceedings. (Second Am. Compl. [#19], ¶¶ 2, 9, 21.) She claims that she had reported concerns to the police involving her then-estranged husband and regarding "improperly documented police reports." (Second Am. Compl. [#19], ¶ 23.)

On August 26, 2022, she was "at her marital home in Converse, Texas." (Second Am. Compl. [#19], ¶ 9.) She pleads that she "had valid temporary court orders granting her residence at [this] property during divorce proceedings." (Second Am. Compl. [#19], ¶ 9.) Ms. Nunn claims that a Bexar County officer arrived at the home. (Second Am. Compl. [#19], ¶ 9.) She explained to the officer that she had "valid temporary court orders granting her residence at the property during divorce proceedings." (Second Am. Compl. [#19], ¶ 9.) The Bexar County officer, who is unnamed in the Second Amended Complaint, allegedly spoke into his radio that this "look[ed] like a civil matter." (Second Am. Compl. [#19], ¶ 9.) Subsequently, two officers of the Converse Police Department—Officers Iris Mata and Kimberly Molder—arrived at the residence. (Second Am. Compl. [#19], ¶¶ 10–12.)

Ms. Nunn alleges that Officer Mata "raised her voice" and asked what Ms. Nunn was doing there. (Second Am. Compl. [#19], ¶ 10.) She claims Officer Mata told her, "We are not going to spend hours at the house again," seemingly referencing past complaints made to the police by Ms. Nunn. (Second Am. Compl. [#19], ¶ 39.) According to Ms. Nunn, Officer Mata "refused to acknowledge" her court order because the order was "too old." (Second Am. Compl. [#19], ¶ 10.) Officer Molder allegedly made a phone call where she described Ms. Nunn's behavior as "violent" and claimed that Ms. Nunn was "dar[ing] them to arrest her," which Ms. Nunn disputes. (Second Am. Compl. [#19], ¶ 11.) The Officers also allegedly discussed with each other that Ms. Nunn had previously been in possession of the house and that the "address on [the] protective order was also listed as [her] children's address." (Second Am. Compl. [#19], ¶ 13.)

Ms. Nunn pleads that Officer Mata "snatched [her] cell phone from [her] hands" and placed her in handcuffs. (Second Am. Compl. [#19], ¶ 12.) Though the pleading is not entirely clear on this issue, it appears she was arrested for burglary. (Second Am. Compl. [#19], ¶ 54.) She pleads that this arrest was without probable cause. (Second Am. Compl. [#19], ¶¶ 17–18.) She also claims that the Officers seized personal property from her "without a warrant or legal justification," and that the seized property included "vehicles, a firearm, security cameras, [a] purse, money, and other items." (Second Am. Compl. [#19], ¶ 21.) Ms. Nunn states that she had to pay towing fees to retrieve her car and pay to replace her seized items that were never returned. (Second Am. Compl. [#19], ¶¶ 12, 14, 37.) Ms. Nunn claims that the Officers' actions "violated [her] clearly established constitutional rights" and were "objectively unreasonable." (Second Am. Compl. [#19], ¶ 68.)

After the arrest, according to Ms. Nunn, body camera footage of the arrest was posted online, "causing harm to her personal and professional relationships." (Second Am. Compl. [#19], ¶ 14.) She claims that the incident negatively affected her position in her divorce proceedings. (Second Am. Compl. [#19], ¶ 14.) She further alleges that she made formal requests to the City of Converse for records related to the arrest, including "bodycam footage, incident reports, and officer training materials," but the City sought a ruling by the Attorney General that the records are exempt from disclosure instead of turning over these materials.[3] (Second Am. Compl. [#19], ¶¶ 15, 55.)

## V.     Analysis

Defendants have moved to dismiss all claims. As noted above, the Court may not consider the body camera footage at this stage. Based on solely on the pleadings, the Court should construe the claims against the Converse Police Department as claims against the City but dismiss Ms. Nunn's claims against the City. As for the claims against Officers Mata and Molder, the Court should deny the motion to dismiss the claims against the two officers for unlawful arrest, unlawful seizure, and First Amendment retaliation but grant the motion to dismiss her claims for excessive force,[4] violation of due process, conspiracy to violate civil rights, and intentional affliction of emotional distress.

## A.     The claims against the Converse Police Department should be construed as claims against the City.

Plaintiff sued Converse Police Department. In order to a sue a city department like a police department, that department must be a "separate and distinct corporate entity" from the

---

[3] It is unclear whether the City has received a response to their request for an Attorney General ruling.

[4] The excessive force claim is brought only against Defendant Mata.

city itself under Texas law. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (internal citations omitted). If the city itself has not granted the department at issue jural authority, it may not sue or be sued. *Id.* The City of Converse's charter does not grant its Police Department the power to sue or be sued. City of Converse Charter, art. V, § 5.02. Because the Converse Police Department may not be a defendant in this lawsuit, the Court will construe the claims against the Police Department as brought against the City and will substitute the City as Defendant. *See Lone Star Chapter Paralyzed Veterans of Am. v. City of San Antonio*, No. SA-10-CV-316-XR, 2010 WL 3155243, at *2 (W.D. Tex. Aug. 5, 2010) (explaining that courts may construe claims brought against non-jural city entities as brought against the city).

**B.    The Court should deny the motion to dismiss the claims against Officers Mata and Molder for unlawful arrest, unlawful seizure, and First Amendment retaliation.**

Ms. Nunn asserts that Officers uMata and Molder violated her rights under the Fourth and Fourteenth Amendments by unlawfully arresting her and unlawfully seizing her property. She also asserts claims against both officers for violations of due process, conspiracy to violate civil rights, intentional infliction of emotional distress, and First Amendment retaliation. She additionally brings a Fourth Amendment excessive force claim against Officer Mata. Of her claims against Officers Molder and Mata, only her claims for unlawful arrest, unlawful seizure of property, and First Amendment retaliation should survive Defendants' motion to dismiss.

**i.    Unlawful Arrest**

Ms. Nunn asserts that Officers Mata and Molder unlawfully arrested her in violation of the Fourth Amendment. (Second Am. Compl. [#19], ¶¶ 17, 32.) The Fourth Amendment protects against unreasonable seizures. U.S. Const. amend. IV. For a warrantless arrest to comply with Fourth Amendment, the arresting officers must have probable cause to believe the suspect has committed a crime. *Bodzin v. City of Dall.*, 768 F.2d 722, 724 (5th Cir. 1985). Therefore, to state

a § 1983 claim for unlawful arrest, a plaintiff must plausibly allege that the Officers did not have probable cause to arrest her. *Arnold v. Williams*, 979 F.3d 262, 269 (5th Cir. 2020).

Officers Mata and Molder argue that the Second Amended Complaint fails to plausibly state a claim for unlawful arrest. They additionally raise a defense of qualified immunity. Qualified immunity shields federal and state officials from individual liability and suits for civil damages. Once an officer raises a qualified-immunity defense, the burden shifts to the plaintiff to plausibly plead that qualified immunity does not apply. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (overruled on other grounds).

To meet this burden, the plaintiff must plead "specific facts" showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Arnold*, 979 F.3d at 267; *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established for purposes of the second step of the qualified-immunity analysis if it would be clear to every reasonable official, at the time of the challenged conduct, that his or her conduct violated the statutory or constitutional right at issue. *al-Kidd*, 563 U.S. at 741 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). At the motion-to-dismiss stage, it is "the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *McClendon*, 305 F.3d at 323 (emphasis in original) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). Because qualified immunity provides immunity not only from monetary liability, but also immunity from having to stand trial, "there is an interest in qualified immunity entering a lawsuit 'at the earliest possible stage of litigation.'" *Arnold*, 979 F.3d at 267 (quoting *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018)). The Court may, however, defer from making a qualified-

immunity ruling at the motion-to-dismiss stage and ordered limited discovery when it requires further clarification of the facts. *Hinojosa v. Livingston*, 807 F.3d 657, 670 (5th Cir. 2015) (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)).

Thus, because Officers Mata and Molder have asserted qualified immunity in response to the unlawful arrest claim, Ms. Nunn must have plausibly alleged (1) that the Officers did not have probable cause to arrest her, and (2) that the Officers' behavior was objectively unreasonable in light of the clearly established law at the time of the incident. *See Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014). Ms. Nunn alleged that she had a court order giving her permission to reside in the home in which she was present. (Second Am. Compl. [#19], ¶ 9.) She also pleaded that the Officers did not have probable cause to believe she had committed burglary or trespass because she told them about this order. (Second Am. Compl. [#19], ¶¶ 17–18.) Moreover, Ms. Nunn pleaded that the Officers' actions "violated [her] clearly established constitutional rights" and were "objectively unreasonable." (Second Am. Compl. [#19], ¶ 68.)

In response, Officers Mata and Molder rely upon their submitted body camera footage to support that they had probable cause to arrest her due to her "possibly burglarizing the habitat and trespassing."[5] (Mot. to Dismiss [#21], ¶ 17.) Yet, as discussed in Section III, *supra*, the Court may not consider this footage at this time. Accepting the facts pleaded by Ms. Nunn as true and viewing them in the light most favorable to her, Ms. Nunn has plausibly alleged that she had a court order allowing her to be in the residence at issue, that there was no probable cause for her arrest, and that the Officers' behavior was objectively unreasonable in light of clearly established law. The Court should therefore deny the Officers' motion to dismiss her unlawful

---

[5] Officer Molder also argues that she "did not participate in detaining Plaintiff." (Mot. to Dismiss [#21], ¶ 20.) Because the evidence allegedly showing this is in the body camera footage that the Court should not consider, the undersigned does not address this argument.

arrest claim without prejudice to the Officers reasserting this defense in a motion for summary judgment after some discovery has occurred.

      **ii.**    <u>**Unlawful Seizure of Property**</u>

Ms. Nunn alleges that Officers Mata and Molder seized her property in violation of the Fourth Amendment. (Second Am. Compl. [#19], ¶¶ 21, 36–37.) A warrantless search or seizure of property is "reasonable" in compliance with the Fourth Amendment "only if it falls within a specific exception to the warrant requirement." *Bailey v. Ramos*, 125 F.4th 667, 679 (5th Cir. 2025) (quoting *Riley v. California*, 573 U.S. 373, 382 (2014)). A warrantless search or seizure "incident to a lawful arrest" is "one of the oldest and most widely used exceptions to the warrant requirement." *Id.* (citing *Riley*, 573 U.S. at 382). When a plaintiff brings both an unlawful arrest and unlawful seizure claim, the "unlawful seizure claim rises and falls with [the] unlawful arrest claim because the exception would not apply if the arrest were deemed unlawful." *Id.*

Ms. Nunn pleads that Officers Mata and Molder, "without legal justification or a warrant," seized multiple items of her property, including her cell phone, vehicles, a firearm, security cameras, a purse, money, and other items. (Second Am. Compl. [#19], ¶¶ 12, 21, 36.) The undersigned has already recommended that the Court deny Defendants' motion to dismiss Ms. Nunn's unlawful arrest claim. Because she has plausibly alleged that she was unlawfully arrested and that her items were unreasonably seized without a warrant, which would be objectively unreasonable in light of clearly established law, the Court should also deny the motion to dismiss Ms. Nunn's unlawful seizure of property claim.

      **iii.**    <u>**First Amendment Retaliation**</u>

Ms. Nunn claims that she was arrested in retaliation for exercising her First Amendment rights. (Second Am. Compl. [#19], ¶¶ 23, 39.) The First Amendment "prohibits government

officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Batyukova v. Doege*, 994 F.3d 717, 729–730 (5th Cir. 2021) (quoting *Nieves v. Barlett*, 587 U.S. 391, 398 (2019)). A plaintiff asserting a First Amendment retaliation claim must plausibly allege, "(1) she was engaged in constitutionally protected activity; (2) the officer's action caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the officer's adverse actions were substantially motivated against her exercise of constitutionally protected activity." *Id.* at 730 (citing *Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017)). A First Amendment retaliation claim "fails if the 'action would have been taken anyway.'" *Id.* (quoting *Hartman v. Moore*, 547 U.S. 250, 260 (2006)). For retaliatory arrest cases, the absence of probable cause "generally provide[s] weighty evidence that the officer's animus caused the arrest." *Nieves*, 587 U.S. at 402.

Ms. Nunn has sufficiently pleaded the three elements of a First Amendment retaliation claim. As to the first element, Ms. Nunn alleged that she had exercised her First Amendment right to petition the government by reporting concerns to the Converse Police Department "about disputes involving her then[-]estranged husband and improperly documented police reports." (Second Am. Compl. [#19], ¶ 23.) As to the second element, she pleads that she was arrested; this is an injury that would "chill a person of ordinary firmness from continuing to engage" in making complaints to the police. (Second Am. Compl. [#19]. ¶¶ 23, 39.) *See Batyukova*, 994 F.3d at 730; *Izen v. Catalia*, 398 F.3d 365, 367 n.5 (5th Cir. 2005) (quoting *Smith v. Plati*, 258 F.3d 1167, 1176 (10th Cir. 2001)) (noting that threatened prosecution satisfies this element). And as to the third element, Officers Molder and Mata allegedly each "referenced prior interactions with Plaintiff" during the incident that resulted in her arrest. (Second Am. Compl. [#19], ¶¶ 23, 39.) She alleges that the Officers' statements and attitudes "demonstrate[d] retaliatory animus

12

and an intent to penalize Plaintiff for asserting her legal rights." (Second Am. Compl. [#19], ¶ 39.) Furthermore, she claims that Officer Molder's stated reason for her arrest was "fabricated," which also "demonstrat[es] retaliatory intent." (Second Am. Compl. [#19], ¶ 23.) *See Nieves*, 587 U.S. at 402 (explaining that a lack of probable cause weighs in favor of an arrest being retaliatory).

Defendants move to dismiss this claim by arguing that Ms. Nunn has not sufficiently alleged her prior interactions with the police "caused" her arrest. Rather, they claim the arrest was based on probable cause. The Court should decline to dismiss the First Amendment retaliation claim on this basis. As with the unlawful arrest and unlawful seizure claims, the Court should not consider the submitted body camera footage to negate Ms. Nunn's plausible allegation that Officers Molder and Mata did not have probable cause to arrest her. Moreover, arresting her in retaliation for making police reports in the past would have been objectively unreasonable in light of clearly established law. Thus, the Court should deny the motion to dismiss Ms. Nunn's First Amendment retaliation claim.

### iv.     Excessive Force

Ms. Nunn claims that Officer Mata used excessive force against her in violation of the Fourth Amendment. To plead a claim of excessive force, a plaintiff must plausibly allege: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ramirez v. Escajeda*, 44 F.4th 287, 291 (5th Cir. 2022) (quoting *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022)). The injury must be "more than *de minimis.*" *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005) (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)).

As Defendants argue in their motion, Ms. Nunn has not alleged any injury caused by Officer Mata. She alleges that Officer Mata "snatched the cell phone from [her] hands and put her in handcuffs." (Second Am. Compl. [#19], ¶ 12.) She argues that this "use of force was objectively unreasonable, as there was no immediate threat to safety, no active resistance by Plaintiff, and no justification for the aggressive seizure of her phone." (Second Am. Compl. [#19], ¶ 43.)

Merely being handcuffed is not a sufficient injury to plausibly allege excessive force. The Fifth Circuit has held that "tight handcuffing alone, even where a detainee sustains minor injuries, does not present an excessive force claim." *Templeton v. Jarmillo*, 28 F.4th 618, 622 (5th Cir. 2022). Here, Ms. Nunn alleges handcuffing alone—not tight handcuffing, nor minor injuries. She therefore has not pleaded sufficient facts to make her claim plausible.

In her response to the motion to dismiss her excessive force claim, Ms. Nunn points to Officer Mata "forcefully seizing" her phone and her "wrongful arrest." (Pl. Resp. [#24], at 8.) But her phone allegedly being seized without justification is already covered by her unlawful seizure claim. Similarly, her argument that Officer Mata did not have a right to handcuff or arrest her goes to her unlawful arrest claim. *See Tarver*, 410 F.3d at 751–52 ("[Plaintiff] makes the inapposite argument that his handcuffing was excessive because the officers were not justified in taking any action against him. Whether the officers had a right to handcuff [Plaintiff] goes to his unlawful arrest claim."). Thus, Ms. Nunn has failed to plausibly allege an excessive force claim, and this claim should be dismissed.

### v. Violation of Due Process

Ms. Nunn asserts that Officers Molder and Mata violated her due process rights in violation of the Fourteenth Amendment. (Second Am. Compl. [#19], ¶¶ 28, 45.) The Fourteenth

Amendment states, in pertinent part, "No State shall . . . deprive any person of . . . property, without due process of law." U.S. Const. amend. XIV. For this due process to be constitutionally adequate, the government must provide notice and an opportunity to be heard. *Matthias v. Bingley*, 906 F.2d 1047, 1051 (5th Cir. 1990), *opinion modified on denial of reh'g,* 915 F.2d 946 (5th Cir. 1990) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).

Though her Second Amended Complaint is not clear on how this claim is different than her Fourth Amendment claims, Ms. Nunn clarified in her Response that her due process claim is based on her being "denied any post-deprivation remedy to challenge the seizure of her property. . . . or recover her property after it was taken."[6] (Pl. Resp. [#24], at 11.) Thus, this is a separate claim from her Fourth Amendment unlawful seizure claim. Ms. Nunn failed to allege, however, how Officers Molder and Mata personally caused her inability to recover her property. *See Magnolia Island Plantation, L.L.C. v. Whittington*, 29 F.4th 246, 251 (5th Cir. 2022) (quoting *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999)) (explaining that to be liable under § 1983, a defendant "must either be 'personally involved in the constitutional violation' or commit 'acts [that] are casually connected to the constitutional violation alleged'"). Rather, this appears to be a claim regarding the City's failure to return her property. The undersigned will therefore recommend that Ms. Nunn's due process claim be dismissed against Officers Molder and Mata but, construing her pleadings liberally, will consider in Section V(C)(iv), *infra*, whether she has plausibly alleged this claim against the City.

### vi.    Conspiracy to Violate Civil Rights

Ms. Nunn alleges that Officer Molder, Officer Mata, and other officers conspired to deprive her of her rights under the Fourth and Fourteenth Amendment. (Second Am. Compl.

---

[6] Because Ms. Nunn is proceeding *pro se*, the undersigned will take into account her Response when construing her Second Amended Complaint.

[#19], ¶¶ 30, 47.) Such a claim would arise under 42 U.S.C. § 1985(3). To state a claim under this statute, a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or a deprivation of any right or privilege of a citizen of the United States." *Jackson v. City of Hearne, Tex.*, 959 F.3d 194, 200 (5th Cir. 2000) (quoting *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010) (per curiam)). In the Fifth Circuit, "the only conspiracies actionable under section 1985(3) are those motivated by racial animus." *Cantú v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019) (quoting *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987)).

Ms. Nunn alleges no facts related to discriminatory animus. She argues in her Response that racial animus is not a required element of conspiracy claims for violations of civil rights, citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). (Pl. Resp. [#24], at 16–17.) This is incorrect. The Supreme Court in that case explicitly stated that the plaintiff had to prove she was arrested "because she was a white person." *Id.* Moreover, the Supreme Court has acknowledged that the conspiracy statute was passed under the Thirteenth Amendment, which abolished slavery and involuntary servitude. *Griffin v. Breckenridge*, 403 U.S. 88, 104–05 (1971). Because Ms. Nunn has not pleaded that her constitutional rights were violated due to her race, the District Court should grant the motion to dismiss this claim.

### vii.    <u>Intentional Infliction of Emotional Distress</u>

Lastly, Ms. Nunn brings a cause of action for intentional infliction of emotional distress ("IIED") against Officers Molder and Mata. (Second Am. Compl. [#19], ¶¶ 25–26, 41.) IIED is an intentional tort. *Twyman v. Twyman*, 855 S.W.2d 619, 621–22 (Tex. 1993). The Court should dismiss Ms. Nunn's IIED claim under the Texas Tort Claims Act ("TTCA").

Municipalities in Texas, including the City of Converse, are immune from suit unless the Texas Legislature has chosen to waive their governmental immunity. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008). All tort claims against governmental entities in Texas are brought under the TTCA,[7] which creates a very narrow waiver of immunity. *Id.* at 655, 658–59. The TTCA only waives immunity if liability arises from the "use of a motor-driven vehicle or motor-driven equipment" or from "a condition or use of tangible personal or real property." Tex. Civ. Prac. & Rem. Code § 101.021. The TTCA does *not* waive immunity for claims arising out of intentional torts.[8] *See* Tex. Civ. Prac. & Rem. Code § 101.057 (excluding waiver of immunity for a claim "arising out of assault, battery, false imprisonment, or any other intentional tort"); *Morgan v. City of Alvin*, 175 S.W.3d 408, 418 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (citations omitted) (stating that the TTCA's "waiver of immunity does not extend to claims arising out of intentional torts").

Under the TTCA, claims filed against a governmental employee for conduct taken within the general scope of her employment and that could have been brought against her employer are "considered to be against the employee in the employee's official capacity only." Tex. Civ. Prac. & Rem. Code § 101.106(f). Governmental employees sued in their official capacity have the "same governmental immunity . . . as [their] government employer." *Franka v. Velasquez*, 332 S.W.3d 367, 382 (5th Cir. 2011) (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 380 (Tex.

---

[7] Ms. Nunn argues in her Response that she is "not seeking relief under the TTCA" and that her claims are instead brought under federal constitutional law pursuant to § 1983. (Pl. Resp. [#24], at 15–16.) Section 1983 does not provide a cause of action for state-law torts; rather, state-law tort claims must be brought under state law. *Baker v. McCollan*, 443 U.S. 137, 146 (1979).

[8] Ms. Nunn asserts that, because the TTCA does not apply to intentional torts, it has waived immunity for those claims. The opposite is true. The TTCA is what waives immunity. Thus, by not covering intentional torts, the TTCA keeps intact the City's immunity from intentional tort liability.

2009); and then citing *Texas A&M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 844 (Tex. 2007)). Because Officers Molder and Mata's job responsibilities were connected to the alleged IIED, Ms. Nunn's IIED claim is brought against them in their official capacities, and the claim is barred by the City's governmental immunity. *See Franka*, 332 S.W.3d at 382; *Morgan*, 175 S.W.3d at 418. The Court should therefore dismiss the IIED claim against the Officers.

**C.     The Court should dismiss the claims against the City of Converse.**

Ms. Nunn brings claims against the City of Converse for various constitutional violations under § 1983 and for general negligence. Municipalities are proper defendants for § 1983 lawsuits, but they are only liable for those constitutional violations if the allegedly unconstitutional actions "result directly from a municipal custom or policy." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (holding that municipalities are liable for constitutional violations where official policy or custom is "the moving force" behind the violation).

Municipal liability under 42 U.S.C. § 1983 therefore requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. at 694. Plaintiffs must plead an official policy or custom "so persistent and widespread as to practically have the force of law," and thus must allege specific facts to support the existence of such a custom. *Ratliff v. Aransas Cnty., Tex.*, 948 F.3d 281, 285 (5th Cir. 2020) (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018)). A plaintiff "must do more than describe the incident that gave rise to his injury." *Peña*, 879 F.3d at 622. Because she has failed to sufficiently plead *Monell* liability and because of the City's governmental immunity from tort liability, each of these claims should be dismissed.

i.    **Failure to Train and Supervise**

Ms. Nunn alleges that the City failed to provide adequate training to its officers or adequately supervise them, resulting in violations of her Fourth and Fourteenth Amendment rights. (Second Am. Compl. [#19], ¶ 49.) To sufficiently plead failure to train or supervise against a municipality, which is a type of *Monell* claim, the plaintiff must allege: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998)). To establish deliberate indifference, the plaintiff normally must allege "a pattern of similar unconstitutional violations by untrained employees" and that "the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Henderson v. Harris Cnty., Tex.*, 51 F.4th 125, 131 (5th Cir. 2022) (quoting *Hutcheson v. Dallas Cnty., Tex.*, 944 F.3d 477, 482 (5th Cir. 2021)); *Goodman*, 571 F.3d at 395 (quoting *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)). There is a "single-incident exception" to this rule, but it is "extremely narrow" and "is generally reserved for those cases in which the government actor was provided no training whatsoever." *Henderson*, 51 F.4th at 131 (quoting *Hutcheson*, 994 F.3d at 483)).

Ms. Nunn did not allege a pattern of similar unconstitutional arrests or seizures,[9] nor did she allege that the City has a policy or practice of not training or supervising its officers that

---

[9] As she argues in her Response, Ms. Nunn does allege a "pattern of withholding records and failing to investigate complaints." (Second Am. Compl. [#19], ¶¶ 50–52; Pl. Resp. [#24], at 13–14.) Even if these allegations are assumed to be true, such a pattern is not sufficient to establish a pattern of unlawful arrests and unlawful seizures of property. To survive a motion to dismiss, the pattern alleged must be similar; "prior indications cannot simply be for any and all

would obviously lead to unconstitutional arrests and seizures. She also did not allege that the City's officers received "no training whatsoever." *See Henderson*, 51 F.4th at 131. Rather, she alleged that the Officers were not provided "adequate training" and were not "properly trained." (Second Am. Compl. [#19], ¶ 49.) Ms. Nunn's allegations therefore fail to meet the "extremely high standard" required for deliberate indifference. *See Stapleton v. Lozano*, 125 F.4th 743, 751 (5th Cir. 2025) (citing *Kelson v. Clark*, 1 F.4th 411, 417 (5th Cir. 2021)) (holding that the plaintiffs did not sufficiently allege deliberate indifference, as it is "an extremely high standard to meet"). Accordingly, the Court should grant the City's motion to dismiss Ms. Nunn's claim for failure to train or supervise.

### ii.   First Amendment Retaliation

Ms. Nunn brings a cause of action against the City for First Amendment retaliation, claiming that it is liable for her allegedly retaliatory arrest. As explained above, to sufficiently plead *Monell* liability for this alleged constitutional violation, plaintiffs must allege (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. at 694. To establish the second element—an official policy—plaintiffs "must do more than describe the incident that gave rise to his injury." *Peña*, 879 F.3d at 622.

The undersigned has already suggested that Ms. Nunn plausibly alleged a claim of First Amendment retaliation. *See* Section V(B)(iii), *supra*. Yet, even accepting the factual allegations in her Second Amended Complaint as true, Ms. Nunn has failed to plausibly allege an official policy of the City related to her arrest. She only describes the incident that gave rise to her arrest,

---

'bad' or unwise acts, but rather must point to the specific violation in question." *See Edwards v. City of Balch Springs, Tex.*, 70 F.4th 302, 312 (5th Cir. 2023) (quoting *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850–51 (5th Cir. 2009)).

which the Fifth Circuit has held is not sufficient to plausibly plead a practice "so persistent and widespread as to practically have the force of law." (Second Am. Compl. [#19], ¶ 61.) *See Peña*, 879 F.3d at 622. She does not allege, for example, that the City of Converse has a history of arresting people in retaliation for First Amendment activity.

Additionally, she neither identifies a City policymaker nor alleges any facts that suggest a policymaker enacted a policy that was the "moving force" behind a violation of her rights. *See Monell*, 436 U.S. at 694. Though she need not specifically identify the policymaker at this stage in the litigation, she was required to allege "facts that show an official policy [was] promulgated or ratified by the policymaker." *See Peña*, 879 F.3d at 622–23 (quoting *Groden v. City of Dall.*, 826 F.3d 280, 284 (5th Cir. 2016)). Her Second Amended Complaint does not make such allegations; it instead refers to the Converse Police Department as a whole. (Second Am. Compl. [#19], ¶¶ 52, 63–64.) This is not sufficient to plausibly allege *Monell* liability. Thus, the City's motion to dismiss Ms. Nunn's First Amendment retaliation claim against the City should be granted.

### iii.    <u>Failure to Intervene</u>

Ms. Nunn asserts that the City is liable for its officer failing to intervene to prevent violations of her constitutional rights by Officers Molder and Mata. (Second Am. Compl. [#19], ¶¶ 66–67.) The Fifth Circuit has recognized failure-to-intervene claims when an officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002)). Liability only attaches where "an officer is . . . present at the scene of the constitutional violation." *Id.* Though this type of bystander-liability claim is generally made in the context of

21

an excessive force claim, the Fifth Circuit has recognized that "other constitutional violations also may support a theory of bystander liability." *Id.* at 646 n.11.

It is not clear in this Circuit, however, whether a *municipality* may be held liable under § 1983 for failure to intervene, as opposed to individual officers. *See, e.g., id.* at 646 (explaining that "an *officer* may be liable under § 1983 under a theory of bystander liability") (emphasis added). Even if the Court assumes that such a claim may be brought against the City, the Court should dismiss this claim. Ms. Nunn's pleading solely includes the conclusory allegation that the Officers' "failure to intervene . . . constitutes accepted policies, practices, or customs of the Converse Police Department." (Second Am. Compl. [#19], ¶ 66.) As with her previously discussed claims based on municipal liability, she has provided no *facts* from which the Court may infer an official policy adopted or ratified by the City's policymaker. *See Peña*, 879 F.3d at 622 (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)) ("To proceed beyond the pleading stage, a complaint[] . . . 'must contain specific facts.'"). The Court should therefore grant the City's motion to dismiss her failure-to-intervene claim.

### iv.    Due Process

As discussed in Section V(B)(v), *supra*, Ms. Nunn alleges that her Fourteenth Amendment due process rights have been violated because she "was denied any post-deprivation remedy to challenge the seizure of her property. . . . or recover her property after it was taken." (Pl. Resp. [#24], at 11.) The Fourteenth Amendment states, in pertinent part, "No State shall . . . deprive any person of . . . property, without due process of law." U.S. Const. amend. XIV. For this due process to be constitutionally adequate, the government must provide notice and an opportunity to be heard. *Matthias v. Bingley*, 906 F.2d 1047, 1051 (5th Cir. 1990), *opinion*

*modified on denial of reh'g,* 915 F.2d 946 (5th Cir. 1990) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).

In *Matthias*, the Fifth Circuit affirmed a jury verdict holding a city liable under the Fourteenth Amendment and § 1983 for destruction of property based on an official policy. *Id.* at 1050–51, 1058. The plaintiffs' property at issue had been lawfully seized by the police. *Id.* at 1048. Rather than return the property to the plaintiffs, the city sold the property at public auction without notifying the plaintiffs. *Id.* at 1049–50. Because the city had done so pursuant to a city ordinance and pursuant to "persistent, widespread, and longstanding practices of police officers," the Fifth Circuit held that "*Monell* clearly holds the City liable for the harms caused here." *Id.* at 1054.

In this case, on the other hand, Ms. Nunn has not alleged that her property is being kept from her pursuant to an official policy or a "persistent, widespread, and longstanding practice" of the City's officers. *See id.* As with her other claims, she solely alleges facts related to her own property. She has therefore failed to plausibly allege municipal liability, and her due process claim against the City should be dismissed.

### v.     General Negligence

Lastly, Ms. Nunn brings a cause of action for general negligence, asserting that the City "failed to exercise reasonable care in training, supervising, and managing its officers and the handling of sensitive materials, resulting in foreseeable harm to [her]." (Second Am. Compl. [#19], ¶ 58.) As described in Section V(B)(vii), *supra*, the City is immune from tort liability unless that immunity has been waived by the State. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008). The State has only waived municipalities' immunity if liability arises from the "use of a motor-driven vehicle or motor-driven equipment" or from "a

condition or use of tangible personal or real property." Tex. Civ. Prac. & Rem. Code § 101.021. Because Ms. Nunn's negligence claim does not arise out of either of those contexts, it is barred by governmental immunity. The Court should therefore grant the City's motion to dismiss her general negligence claim.

## VI.     Conclusion and Recommendation

Having considered Defendants' motion, the response and reply thereto, the pleadings, and the governing law, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss Second Amended Complaint [#21] be **GRANTED IN PART AND DENIED IN PART**, and specifically, that:

- Plaintiff's due process, conspiracy to violate civil rights, and intentional infliction of emotional distress against Officers Molder and Mata should be **DISMISSED**.

- Plaintiff's excessive force claim against Officer Mata should also be **DISMISSED**.

- All of Plaintiff's claims against the City of Converse Police Department, which are construed as claims against the City of Converse, should be **DISMISSED**.

- Defendants' motion should in all other respects be denied, and Plaintiff's unlawful arrest, unlawful seizure, and First Amendment retaliation claims against Officers Molder and Mata should **survive**.

## VII.     Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing

objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 22nd day of May, 2025.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE